UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

JOAN SIMON,

              Plaintiff,

vs.

SAINT DOMINIC ACADEMY,
GUENDOLYN FARRALES and
JOHN DOES 1-3,

              Defendants.

Civil Action No.: 2:19-cv-21271-JMV-MF

Motion Date: October 19, 2020
Oral Argument Requested

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS SAINT DOMINIC ACADEMY'S AND GUENDOLYN FARRALES'S MOTION TO DISMISS

James K. Webber
WEBBER MCGILL LLC
760 Route 10, Suite 104
Whippany, NJ 07981
(973) 739-9559
jwebber@webbermcgill.com

*Attorneys for Defendants Saint Dominic Academy and Guendolyn Farrales*

Dated:  July 2, 2021

## INTRODUCTION

Defendants Saint Dominic Academy ("SDA") and Guendolyn Farrales ("Defendants") move to dismiss the entirety of the Second Amended Complaint filed by Plaintiff Joan Simon ("Plaintiff"). This is the third, and hopefully final, motion Defendants have made in response to Plaintiff's initial pleadings. The first was a Motion to Dismiss Plaintiff's Complaint without prejudice, which the Court granted almost in its entirety. Plaintiff then filed an Amended Complaint. The Amended Complaint suffered from the same defects as Plaintiff's original Complaint, and, more importantly, its claims were barred by the United States Supreme Court's elucidation of the First Amendment's ministerial exception in Our Lady of Guadalupe School v. Morrissey-Beru, 140 S. Ct. 2049 (2020). That case holds that the "ministerial exception" provided by the United States Constitution's First Amendment exempts most personnel decisions of religious schools from most workplace discrimination laws and breach of contract claims. The Court agreed with Defendants once again and dismissed the entirety Plaintiff's Amended Complaint without prejudice in April of this year.

Plaintiff nevertheless has filed a specious Second Amended Complaint that is the same as Plaintiff's first two Complaints in all material respects. The facts and legal arguments that led the Court to dismiss the first two Complaints remain operative, making Plaintiff's third bite at the apple particularly frivolous. The Second Amended Complaint omits or repackages facts Plaintiff alleged previously in a naked and futile attempt to plead around Defendants' fundamental Constitutional rights, rights that this Court already has recognized and vindicated. Plaintiff's effort is farcical, and borders on the abusive. Defendants therefore once again ask this Court to dismiss with prejudice all of the counts in Plaintiff's Second Amended Complaint.

2

## PROCEDURAL HISTORY

Plaintiff filed her Complaint on November 1, 2019, in the Superior Court of New Jersey, Law Division, Hudson County. The Complaint alleged eight causes of action: (1) violation of the New Jersey Law Against Discrimination, N.J.S.A. §10:5-1 to -42 ("NJLAD"), for age discrimination; (2) violation of the NJLAD for disability discrimination; (3) violation of the NJLAD for hostile work environment; (4) violation of the NJLAD for "termination;" (5) violation of the NJLAD for religious discrimination; (6) breach of contract as to SDA; (7) breach of implied covenant of good faith and fair dealing as to SDA; and (8) violations of N.J.S.A. §34:15-39.1, et seq. for unlawful discharge of, or discrimination against, an employee claiming workers' compensation benefits, and the Family Medical Leave Act, 29 U.S.C. §2601, et seq. as to SDA.[1] On December 11, 2019, Defendants removed the matter to this Court on the basis of federal question jurisdiction pursuant to 28 U.S.C. §1331.

Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) on January 8, 2020, seeking dismissal without prejudice of the first seven of Plaintiff's eight counts. Plaintiff failed to oppose the Motion to Dismiss, and instead attempted to file an amended complaint on February 3, 2020. On July 29, 2020, the Court entered an Order dismissing without prejudice all seven of the subject counts except Plaintiff's Count Four as to SDA. The Court ordered Plaintiff to file an amended pleading by August 28, 2020, "to cure the deficiencies noted herein." July 29, 2020, slip. op. at 10.

Plaintiff filed an Amended Complaint on August 26, 2020. The Amended Complaint contained eleven counts, as follows: (1) violation of the NJLAD for retaliation and

---

[1] Plaintiff re-filed the Complaint on November 27, 2019, to correct an electronic filing error. The Complaint filed on November 1st and re-filed on November 27th are identical documents.

discrimination against Plaintiff based on her age and complaints of discrimination about her age; 2) violation of the NJLAD for disability discrimination; 3) violation of the NJLAD for hostile work environment; 4) violation of the NJLAD for disability discrimination; 5) violation of the NJLAD for religious discrimination; 6) violation of N.J.S.A. §34:15-39.1, et seq. for unlawful discharge of, or discrimination against, an employee claiming workers' compensation benefits; 7) violation of the Family Medical Leave Act, 29 U.S.C. §2601, et seq. ("FMLA") as to SDA; [2] 8) breach of contract as to SDA; 9) breach of the implied covenant of good faith and fair dealing as to SDA; 10) retaliation for taking leave under the FMLA; 11) violations of the New Jersey Family Leave Act, N.J.S.A. 34:11b-1, et seq. (the "NJFLA").[3] Defendants moved to dismiss the entirety of the Amended Complaint on September 23, 2020, and on April 28, 2021, the Court granted dismissal of the entire Amended Complaint without prejudice.

Plaintiff filed the Second Amended Complaint on May 28, 2021. The Second Amended Complaint contains the same 11 counts as the Amended Complaint, right down to the typographical error of listing the "Sixth Count" twice, and the incorrect statutory citation to the NJFLA, which Defendants highlighted in its last submission to this Court. Defendants now seek dismissal, with prejudice, and once and for all, of all of Plaintiff's claims.

## FACTUAL BACKGROUND

---

[2] Plaintiff's Amended Complaint contains two counts designated "Sixth Count."

[3] The Amended Complaint improperly identifies the NJFLA as N.J.S.A. 4A:6-1, et seq.

4

Plaintiff's Second Amended Complaint tries in vain to present allegations that will survive the insurmountable legal obstacles Plaintiff faces. The relevant facts as pled in Plaintiff's Amended Complaint are few and, like Plaintiff's first two Complaints, present in a confusing and often incomprehensible manner.

One blatant factual end run Plaintiff attempts in the Second Amended Complaint is the obvious omission of the fact that SDA is a Catholic high school operating under the auspices of the Archdiocese of Newark in Jersey City, New Jersey. Plaintiff pleaded that fact in the Amended Complaint at ¶ 2; Plaintiff now alleges only that SDA "is a private college-preparatory [sic] for girls seventh through twelfth grades." Second Amended Complaint at ¶ 2. SDA's Catholicity cannot be ignored, however. The SDA Employee Handbook to which Plaintiff's Second Amended Complaint refers states clearly that the school is "first and foremost a Catholic institution and thus holds an expectation that all faculty and staff respect and uphold Catholic tradition and teaching. Teachers and staff must also respect and support the spirit of the faith community that is central to Saint Dominic Academy." SDA Employee Handbook, attached to the Certification of Sharon Buge ("Buge Cert.") at Ex. B at 5. Plaintiff's deliberate and disingenuous wordsmithing does not diminish SDA's Constitutional rights, and Defendants respectfully ask the Court to acknowledge the reality of SDA's religious character and mission notwithstanding Plaintiff's eleventh-hour attempt to omit mention of it.

The balance of the facts at issue remains largely the same as the previous filings. Plaintiff worked at SDA as a theology teacher and the chair of the Religion Department, and her responsibilities included oversight of Campus Ministry. Id. at ¶ 12. Plaintiff has a Masters in Theology. Id. SDA terminated Plaintiff's employment in 2018. Id. at 8. Other than that, the Second Amended Complaint's allegations once again vent apparently pent-up grievances with

5

SDA that do not amount to causes of action against Defendants. Virtually every paragraph in the Second Amended Complaint appeared verbatim in the Amended Complaint, which itself was a near facsimile of the Complaint.

Plaintiff alleges that she alerted SDA's leadership to a laundry list of "violations of the law and violations of educational process," including, but not limited to, failure to conduct routine fire drills, leaving students unattended during the school day, and the inadequate credentialing of the SDA administration. Id. at ¶ 13. Nothing in the litany of alleged wrongdoing has anything to do with any protected status or activity relating to Plaintiff. Plaintiff's stated causes of action fall into three buckets: (1) a variety of claims deriving from the NJLAD (the First through Fifth Counts); (2) counts relating to state workers compensation and state and federal family leave laws (the Sixth, Sixth, Ninth and Tenth Counts);[4] and two breach of contract claims (the Seventh and Eighth Counts).

In her First Count, Plaintiff alleges that Defendants retaliated against her for having opposed a practice that violated the NJLAD. Id. at ¶¶ 19 and 21. Plaintiff alleges that she complained that SDA treated her poorly because of her age, but does not identify when she made such complaints, how she was treated poorly, when she was treated poorly, or who treated her poorly based on that characteristic. Id. at ¶ 18. Plaintiff also alleges that Defendant Farrales gave "substantial assistance or encouragement" to SDA's alleged NJLAD violations, without identifying how Defendant Farrales did so.[5] Id. at ¶ 23.

---

[4] Again, Plaintiff lists two "Sixth Counts."

[5] For the first time, Plaintiff makes allegations against Sarah Degnan, Head of School, as if Ms. Degnan is a party to this litigation. Ms. Degnan is not, however, and all references or allegations to Ms. Degnan's liability should be ignored or stricken.

In the Second Count, Plaintiff alleges that she suffered from "disabling conditions," but does not identify the alleged conditions. Id. at ¶ 26. Plaintiff also alleges that SDA failed to accommodate Plaintiff, but does not identify what accommodation Plaintiff needed, or what the law required SDA to provide. Id. Once again, Plaintiff baldly alleges, without substantiation, that Defendant Farrales gave "substantial assistance or encouragement" to SDA in violating the NJLAD by failing to accommodate Plaintiff. Id. at ¶ 27.

In the Third Count, Plaintiff alleges that SDA's treatment of Plaintiff constituted "harassment" that "would not have occurred but for Plaintiff Simon's age." Id. at ¶¶ 32-34. Plaintiff goes on to describe a "hostile work environment" that seemingly consisted of Defendant's failure to take "appropriate measures" in response to the litany of complaints Plaintiff had made to school administrators. Id. at ¶ 37. Plaintiff also makes vague allegations about SDA "failing to maintain effective sensing or monitoring mechanisms to check the trustworthiness of its policies and complaint structures." Id. at ¶ 38. Plaintiff alleges that the failure to have such mechanisms was evidenced by Defendant Farrales's and another SDA employee's unidentified "inappropriate conduct" toward other SDA employees and Plaintiff. Id. at ¶ 39. Again, in the Third Count, Plaintiff makes the formulaic allegation against Defendant Farrales to the effect that she had given "substantial assistance or encouragement" to the allegedly unlawful acts. Id. at ¶ 42.

Plaintiff's Fourth Count alleges, without more, that SDA terminated Plaintiff because she had been out for a period of time after a motor vehicle accident in violation of the NJLAD. Id. at ¶ 46. The count does not include allegations as to the harm Plaintiff suffered as a result of the alleged car accident or how long those undisclosed injuries kept her out of work. Plaintiff also

alleges that Defendant Farrales gave "substantial assistance or encouragement" to SDA's alleged retaliation. Id. at ¶ 47.

In her Fifth Count, Plaintiff alleges that SDA discriminated against Plaintiff on the basis of her religious beliefs. Id. at ¶ 51. Plaintiff does not identify how those beliefs differ in any way from Defendants', or other individuals who allegedly had access to the "Department chair meetings" from which SDA allegedly excluded Plaintiff. Id. at ¶ 52. And again, Plaintiff alleges that Defendant Farrales provided "substantial assistance or encouragement" making her individually liable under the NJLAD, but does not describe Defendant Farrales's actions in any way. Id. at 53.

In Plaintiff's first "Sixth Count," Plaintiff alleges that SDA violated the New Jersey workers compensation law, N.J.S.A. 34:15-39.1 et seq. Plaintiff does not identify which provision of the statute SDA allegedly violated, and quotes language that Defendants do not find in the statute itself. Id. at 57. More problematically, Plaintiff fails to allege that she actually received workers compensation benefits, a prerequisite for being protected against retaliation under the statute.

In her other "Sixth Count," Plaintiff alleges that she was entitled to be restored to her position with SDA after taking FMLA leave. Id. at ¶ 60. Plaintiff fails to allege that she is an employee under the FMLA or that SDA is an employer covered by the FMLA, however. Because this Motion aims to dismiss with prejudice all of Plaintiff's claims at this time, SDA hastens to add that SDA is not, in fact, a covered employer under the statute. SDA did not employ more than 50 employees for more than 20 weeks at a time in 2017 or 2018. Buge Cert. at Exhibit A.

8

In Plaintiff's Seventh Count, Plaintiff alleges that SDA breached a contract with her that was formed by SDA's Employee Manual. Id. at ¶ 64. The Count does not identify a specific provision in the manual that SDA allegedly violated. Plaintiff's Eighth Count alleges a breach of the covenant of good faith and fair dealing belonging to an unspecified contract, presumably the same contract alleged to exist in the Seventh Count. Id. at ¶ 70.

Plaintiff's Ninth Count alleges that SDA terminated her in retaliation for taking intermittent leave pursuant to the FMLA. Id. at ¶ 75. Plaintiff's Tenth Count alleges that Plaintiff took leave protected by the NJFLA and that SDA failed to reinstate her, as required. Id. at ¶¶ 81 and 82. Plaintiff alleges that "there were serious health conditions of a parent" that justified that leave, but does not describe what health conditions there were, which parent had those conditions, when she took NJFLA leave, or for how long. Id. at ¶ 82.

## ARGUMENT

### 1. Motion to Dismiss Standard

The Federal Rules of Civil Procedure apply to Defendants' Motion to Dismiss. "Once removed, jurisdiction in the District Court is original and federal procedure applies." Paramount Aviation Corp. v. Agusta, 178 F.3d 132, 138 n.3 (3d Cir. 1999); see also Russell v. Chesapeake Appalachia, L.L.C., 2014 WL 6634892, at *5 (M.D. Pa. Nov. 21, 2004) ("A removed action proceeds as if it had originally been brought in federal court . . . .") (internal citations omitted), (attached to the Certification of James K. Webber ("Webber Cert.") as Ex. A).

In deciding a motion to dismiss, courts are to "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Phillips v.

9

County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008) (citation omitted). In deciding a motion to dismiss, the Court may consider, in addition to the allegations of the complaint, all documents specifically referenced in the complaint, as well as all matters of public record and facts and circumstances susceptible to judicial notice. Pittsburgh v. W. Penn Power Co., 147 F.3d 256, 259 (3d Cir. 1998); In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d. Cir. 1997) (a document explicitly relied upon in the complaint may be considered without converting the motion into one for summary judgment).

A motion to dismiss should be granted if the plaintiff is unable to articulate sufficient facts to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 569 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009). The issue before the Court "is not whether plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence in support of the claims." Burlington, 114 F.3d at 1420 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

While the Court must accept well-pled allegations as true for the purposes of the motion, it may not accept bald assertions or unsupported legal conclusions set forth in the complaint. New Hampshire Ins. Co. v. Diller, 678 F. Supp.2d 288, 307 (D.N.J. 2009); Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statement, do not suffice." Advanced Rehab., LLC v. Unitedhealthgroup, Inc., 498 Fed. Appx. 173, 177 n.3 (3d Cir. 2012) (quoting Ashcroft, 556 U.S. at 678); see Rider v. State Dep't of Transp., 221 N.J. Super. 547, 552 (App. Div. 1987) (the Court need not, and should not, accept as true "legal conclusions, unwarranted inferences or sweeping conclusions in the form of factual allegations."). "The plaintiff must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

10

not do.'" Advanced Rehab., 498 Fed. Appx. at 176 (quoting Twombly, 550 U.S. at 555). That is especially true in the employment discrimination context. "[W]hile a discrimination complaint need not allege facts establishing each element of a prima facie case of discrimination to survive a motion to dismiss . . . it must at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." EEOC v. Port Auth. of N.Y. & N.J., 768 F.3d 247, 254 (2d Cir. 2014).

When a plaintiff names more than one defendant, the allegations against each defendant must be clear and specific.

> [M]ere "conclusory allegations against defendants as a group" which "fail to allege the personal involvement of any defendant" are insufficient to survive a motion to dismiss. Galicki v. New Jersey, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015) [attached to the Webber Cert. as Ex. B]. A plaintiff must allege facts that "establish each individual [d]efendant's liability for the misconduct alleged." Id. When several defendants are named in a complaint, plaintiff cannot refer to all defendants "who occupied different positions and presumably had distinct roles in the alleged misconduct" without specifying "*which* [d]efendants engaged in what wrongful conduct." Falat v. County of Hunterdon, 2013 WL 1163751, at *3 (D.N.J. Mar. 19, 2013) (emphasis in original) [attached to the Webber Cert. as Ex. C]. Put simply, a complaint that contains "impermissibly vague group pleading" will be dismissed. Id. at *11.
> [Atuegwu v. Essex County College, 2019 WL 6609491, at *4 (D.N.J. Dec. 5, 2019, Vazquez, U.S.D.J.) (attached to the Webber Cert. as Ex. D).]

Courts ordinarily must confine their analysis to the facts as pled within the four corners of a complaint when considering a Rule 12(b)(6) motion. Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). Courts may exercise their discretion to consider extrinsic documents that are integral to the complaint. Ibid. A trial court's decision to review documents not attached to the complaint is reviewed on an abuse of discretion standard. Estate of Roman v. Newark, 914 F.3d 789, 797 (3d Cir. 2019). Courts may consider matters of public record when ruling on a motion to     dismiss     without     converting     the     motion     to     a     Fed.R.Civ.P.     56

motion. In re Rockefeller Center Properties, Inc. Sec. Litig., 184 F.3d 280, 292–93

(3d Cir. 1999). Judicial proceedings are public records of which courts may take judicial notice.

Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). When a Court otherwise considers facts

outside the four corners of a complaint, the motion to dismiss can be converted to a summary

judgment motion. Fed.R.Civ.P. 12(d).[6]

If complaints run afoul of Rule 12(b)(6), plaintiffs ordinarily are given the opportunity to

re-plead their complaints to state a claim. Courts may dismiss claims with prejudice, however,

when amendment of the pleadings appears futile. "An amended complaint is futile if it merely

restates the same facts as the original complaint in different terms, reasserts a claim on which the

court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss."

Simpson v. Socialist People's Libyan Arab Jamahiriya, 529 F. Supp.2d 80, 84 (D.D.C. 2008).

Dismissal with prejudice becomes even more appropriate when a court provides advice on how

to cure a deficient pleading but the plaintiff fails to act on that advice. Kuehl v. F.D.I.C., 8 F.3d

---

[6] In this matter, consideration of the fact that SDA is a Catholic high school does not warrant conversion of Defendants' Motion to a summary judgment motion. Plaintiff bases at least two of her causes of action, the First and Fourth, on SDA's Employee Handbook. Second Amended Complaint at ¶¶ 21 and 46. Plaintiff having introduced and relied upon the SDA Employee Handbook to assert her claims, the Court may properly consider that document in deciding the present motion. Schmidt, 770 F.3d at 249. Moreover, Plaintiff herself alleged that SDA is a Catholic school in her Amended Complaint, which is a public document filed with the Court. In any event, even if the Court converts the present motion based on the information contained in the SDA Employee Handbook, it would do so only to decide the motion on First Amendment grounds; the fact that SDA is a Catholic school is irrelevant to the other fatal flaws in Plaintiff's Second Amended Complaint. Plaintiff cannot dispute that SDA is a Catholic school, and, as made clear by Our Lady of Guadalupe, no other fact that Plaintiff can offer in a summary judgment analysis can save her claims. In short, Plaintiff fails to state a claim under Fed.R.Civ.P. 12(b)(6) and cannot carry her burden pursuant to Fed.R.Civ.P. 56.

905, 908 (1ˢᵗ Cir. 1993). Squandering second and third chances to state a claim is an indication that any amendment of the pleading would be futile. Simpson, 529 F. Supp.2d at 85.

## 2.  First Amendment Rights of Religious Schools

As Defendants highlighted for the Court in its motion to dismiss the Amended Complaint, the United States Supreme Court in Our Lady of Guadalupe, supra, 140 S. Ct. 2049, held that the First Amendment rights of religious schools preclude second-guessing of certain personnel decisions by courts. That holding serves to bar Plaintiff's claims.

In its April 28, 2021, Opinion, this Court analyzed Our Lady of Guadalupe and related cases discussing the "ministerial exception" doctrine. Defendants will not belabor this case-ending point. In April, the Court properly held that the ministerial exception barred all of Plaintiff's claims because Plaintiff's causes of action would require the Court to review or second guess a religious institution's doctrinal decisions about the personnel it employs. April 28, 2021, slip. op. at 5-7. Nothing in the clumsily re-packaged Second Amended Complaint alters that simple yet powerful conclusion.[7]

## 3.  Plaintiff Still Has Not Pled Cognizable Discrimination Claims

---

[7] Defendants of course urge the same dismissal for the counts against Defendant Farrales. Tarr v. Ciasulli, 181 N.J. 70, 82-83 (2004) (individual cannot have liability for aiding and abetting that which is not violation of law in the first place).

For the sake of completeness, Defendants will restate the balance of the arguments Defendants made in the previous motions to dismiss, but which the Court previously found unnecessary to reach in its April 28, 2021, Opinion.

### a. First Count – Retaliation based on age

Plaintiff's First Count appears to conflate a claim of retaliation and a claim of age discrimination. The NJLAD prohibits retaliation by forbidding "any person to take reprisals against any person because that person has opposed any practices or acts forbidden under [the NJLAD] or because that person has filed a complaint." N.J.S.A. § 10:5-12(d). To prevail on a retaliation claim, a plaintiff must put forth a prima facie case, showing: (1) she engaged in a protected activity; (2) she suffered an adverse employment action either after or contemporaneous with the protected activity; and (3) there is a causal connection between the two events. Delli Santi v. CNA Ins. Cos., 88 F.3d 192, 198 (3d Cir. 1996). "In addition, in order to recover for LAD retaliation, plaintiff must also demonstrate that the original complaint was both reasonable and made in good faith." Battaglia v. United Parcel Service, Inc., 214 N.J. 518, 547 (2013).

As for age discrimination, a plaintiff must show that the plaintiff's age "played a role in the decision-making process and that it had a determinative influence on the outcome of that process." Bergen Commercial Bank v. Sisler, 157 N.J. 188, 207 (1999). A prima facie case of age discrimination consists of showing that: (1) the plaintiff was a member of the protected class; (2) the plaintiff was qualified for the position she held; (3) the plaintiff suffered an adverse employment action; and (4) the employee was replaced by an employee who was sufficiently younger to permit an inference of age discrimination. Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 300–1 (3d Cir. 2004).

Causation in an NJLAD case must be shown by evidence of circumstances that lead to an inference of retaliatory motive. Romano v. Brown & Williamson Tobacco Corp., 284 N.J. Super. 543, 550 (App. Div. 1995). Such circumstances can arise when "those exhibiting discriminatory animus influenced or participated in the decision to terminate." Abramson v. William Paterson College of N.J., 260 F.3d 265, 286 (3d Cir. 2001). Sometimes close temporal proximity between a protected activity and an adverse employment action also can lead to an inference of retaliation. Clark County School Dist. v. Breeden, 532 U.S. 268, 273 (2001).

The Court dismissed Plaintiff's age discrimination claim in the original Complaint because Plaintiff failed to allege her age or the age of the alleged comparator. Slip op at 4. Although Plaintiff now alleges that her replacement was "under the age of 30; upon information and belief age 23," Plaintiff does not allege her own age. Second Amended Complaint at ¶ 10. Plaintiff also does not allege that she engaged in a protected activity. Although Plaintiff apparently complained about a litany of issues at SDA, none of which concern activities prohibited by the NJLAD. Young v. Twp. of Irvington, 629 Fed. Appx. 352, 357 (3d Cir. 2015) (plaintiff's retaliation claim dismissed because complaints did not implicate violations of NJLAD). In addition, Plaintiff's Second Amended Complaint utterly fails to explain how either her complaints or her age had anything to do with her termination. Plaintiff fails to allege that any decisionmaker possessed any retaliatory or age-related animus that would lead to an illegal termination. (In fact, Plaintiff makes no clear allegation at all about who the decisionmakers on her termination were.) For those reasons, Plaintiff's First Count should be dismissed with prejudice.

### b. Second Count – Disability discrimination by failing to accommodate Plaintiff's alleged disability

Plaintiff alleges that SDA failed to accommodate an unidentified disability from which she suffered.  The NJLAD requires employers to provide reasonable accommodations to employees with disabilities.  Victor v. State, 203 N.J. 383, 412 (2010).  "[R]easonable accommodation refers to the duty of any employer to attempt to accommodate the physical disability of the employee, not to a duty on the part of the employer to acquiesce to the disabled employee's requests for certain benefits or remuneration."  Id. at 423 (citations, emphases, and quotations omitted).  An obvious prerequisite to such a claim is for a plaintiff to show that she does, in fact, suffer from a condition that is considered a disability under the statute. Cunningham v. Nordisk, 615 Fed. Appx. 97, 100 (3d Cir. 2015).

The Court dismissed Plaintiff's Count Two originally because Plaintiff failed to provide any details about her disability, the accommodations she requested, or that Defendant SDA denied whatever requests Plaintiff made.  July 29, 2020, slip. op. at 5.  In the Second Amended Complaint, Plaintiff once again fails to identify the disability from which she allegedly suffered. Moreover, Plaintiff again fails to allege how, if at all, SDA could have accommodated the unidentified disability.  Plaintiff is not entitled to a fourth attempt to provide basic information that Plaintiff should have provided the first time.  Defendants therefore respectfully request that Plaintiff's Second Count be dismissed with prejudice.

### c.  Third Count – Hostile work environment

Plaintiff alleges that she suffered from a hostile work environment because of her age. "To state a prima facie hostile work environment claim under the NJLAD, a plaintiff must show the complained of conduct: "(1) would not have occurred but for the employee's protected status, and was (2) severe or pervasive enough to make a (3) reasonable person believe that (4) the conditions of employment have been altered and the working environment is hostile or

16

abusive." Rich v. State of NJ, 294 F. Supp.3d 266, 281 (D.N.J. 2018) (internal citations omitted). The gravamen of a hostile environment claim is "extremely insensitive conduct against the protected person so egregious that it alters the conditions of employment and destroys the person's equal opportunity in the workplace." Ibid. "Harassment is pervasive when incidents of harassment occur either in concert or with regularity." Muench v. Twp. of Haddon, 255 N.J. Super. 288, 299 (App. Div. 1992) (citations omitted). The "severe or pervasive" test applies to the alleged harasser's conduct, not the conditions under which the employee works. Ibid. Importantly, not everything that makes an employee unhappy creates an actionable hostile work environment claim. Id. at 281-82.

Although admittedly a fact-sensitive analysis, prior cases provide guidance as to what behavior is considered "severe or pervasive." In Rich, the court held that an employer's provision of a fitness for duty test, surveillance of the plaintiff, and the sharing of medical information with another state agency did not constitute actions that a reasonable person could have found severe or pervasive under the circumstances. Rich, 294 F. Supp.3d at 282. In Clayton vs. Atlantic City, 538 Fed. Appx. 124, 129 (3d Cir. 2013), the Third Circuit held that a female police officer whose male supervisor grabbed her buttocks, and whose male co-workers made lewd comments about over the police radio, did not suffer from a hostile work environment because the incidents were sporadic and occurred over several years. And in Pagan v. Holder, 741 F. Supp.2d 687, 698 (D.N.J. 2010), the court held that a male co-worker's comment to the effect that the female plaintiff could not be a personal trainer because of her gender was not severe or pervasive enough to form the basis of a claim.

In this matter, the Court observed that Plaintiff failed to allege any facts that would support her hostile work environment claim. July 29, 2020, slip op. at 6. Plaintiff's Second

17

Amended Complaint contains the same failing – Plaintiff simply refuses to describe behavior that could be severe or pervasive enough to support a claim for hostile work environment. There is certainly nothing that allows one to draw a rational inference that any indignity Plaintiff allegedly suffered was tied in any way to Plaintiff's age. Moreover, there is nothing in the Second Amended Complaint that suggests that the conditions of Plaintiff's employment were altered such that her equal opportunity in the workplace had been destroyed. For those reasons, Plaintiff's Third Count should be dismissed with prejudice.

### d. Fifth Count – Religious discrimination

Plaintiff's Fifth Count alleges disparate treatment on the basis of her religion. "In order to establish a prima facie case for allegations of disparate treatment [under NJLAD], a plaintiff must establish that: (1) he belongs to a protected class; (2) he was performing his job at a level that met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) others not within the protected class did not suffer similar adverse employment action.' Rogers v. Alternative Res. Corp., 440 F. Supp.2d 366, 371 (D.N.J. 2006) (internal citation omitted)." Khan v. City of Paterson, 2018 WL 2059550, at *12 (D.N.J. May 2, 2018) (attached to the Webber Cert. as Ex. E).

The Court dismissed Plaintiff's Fifth Count because Plaintiff failed to identify her religious affiliation or allege how others not of her religious tradition received better treatment. July 29, 2020, slip. op. at 8-9. Plaintiff now alleges that her "beliefs are consistent with the Roman Catholic Church," but still fails to explain how others of different faiths were treated better than she was. Second Amended Complaint at ¶ 46. On this count, like the others, Plaintiff's Second Amended Complaint must be dismissed with prejudice.

18

### 4. The Sixth Counts, the Ninth Count, and the Tenth Count

#### a. The First Sixth Count – Workers compensation retaliation

Plaintiff alleges that Defendant SDA violated NJ.S.A. § 34:15-39 et seq. when it terminated her employment upon her return from leave. Amended Complaint at ¶ 58. The elements of such a claim are rather simple. A plaintiff must show that (1) the plaintiff "made or attempted to make a claim for workers' compensation;" and (2) the plaintiff "was discharged in retaliation for making that claim." Hejda v. Bell Container Corp., 450 N.J. Super. 173, 192 (App. Div. 2017) (quotations omitted). Plaintiff fails to allege that she actually received workers compensation benefits, and when, and therefore the first Sixth Count should be dismissed with prejudice.

#### b. The Second Sixth Count – Family and Medical Leave Act

Plaintiff's second Sixth Count alleges violation of the FMLA. Plaintiff's claim on this issue fails for the basic reason that Defendants are not and were not subject to the FMLA. SDA did not employ the requisite number of individuals, 50, for the requisite number of weeks, 20, to be covered by the statute. The FMLA applies only to employers that are "engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year[.]" 29 U.S.C. § 2611(4)(A). In 2018, at the time of Plaintiff's termination, Defendant SDA employed only 41 individuals. Buge Cert. Ex. A. In 2017 and 2018, SDA did not employ more than 50 employees for more than 20 weeks at a time. Id. Because Defendant SDA was not a covered employer under the FMLA, Plaintiff cannot sue for interference with FMLA rights.

#### c. The Ninth Count -- Retaliation for taking FMLA Leave

Plaintiff alleges retaliation for taking "intermittent leave" protected by the FMLA. Second Amended Complaint at ¶ 75.  The simple elements of a prima facie case of FMLA retaliation are:  (1) the plaintiff invoked her right to FMLA-qualifying leave; (2) the plaintiff suffered an adverse employment action; and (3) the adverse employment action was causally related to the invocation of rights."   Ross v. Gilhuly, 755 F.3d 185, 193 (3d Cir. 2014). Plaintiff's claim in this regard fails for the same reason Plaintiff's FMLA claim fails – Plaintiff was not eligible for FMLA leave.

### d.  Tenth Count -- Violation of New Jersey Family Leave Act

Plaintiff alleges that Defendant SDA violated the NJFLA.  Similar to the FMLA, the NJFLA generally permits employees to take up to 12 weeks of job-protected leave in a 24-month period for the purpose of taking care of ill family members or on the occasion of the birth or adoption of a child.  N.J.S.A. 34:11B-4.  Just like the FMLA, through June 30, 2019, the statute covered employers with 50 or more employees for 20 or more weeks of the year.  N.J.S.A. 34:11B-3(f)(3).  For the reasons stated above, SDA was not covered by the NJFLA in 2018, and therefore the Court should dismiss Plaintiff's Tenth Count.

### 5.  Plaintiff Has Not Pled her Claims of Breach of Contract Properly

### a.  Seventh Count – Breach of contract against SDA

Plaintiff's Seventh Count alleges that SDA's Employee Manual and "the rules of the workplace" created a contract between Plaintiff and SDA.  Plaintiff alleges that SDA breached that contract by (i) firing Plaintiff without just cause, (ii) "failing to inform Plaintiff Simon of her statutory rights under the leave requirements," as SDA apparently was contractually obligated to do, and (iii) failing to look after Plaintiff's interests "in contravention of the Manual's mandate."

20

Second Amended Complaint at ¶ 65.  In New Jersey, to state a contract claim based on an employee manual or other widely distributed policy, a plaintiff must point to a specific provision containing an express or implied promise relating to employment terms and conditions. Michaels v. BJ's Wholesale Club, Inc., 2014 WL 2805098, at *14 (D.N.J. June 19, 2014)  (citing Witkowski v. Thomas J. Lipton, Inc., 136 N.J. 385, 397-98 (1994) (citation omitted)) (attached to the Webber Cert. as Ex. F).

The Court dismissed Plaintiff's original breach of contract claim because Plaintiff did "not point to any specific provisions of the employment manual," and therefore failed to provide sufficient particulars to support her claim.  July 29, 2020, slip op. at 9.  The Second Amended Complaint's nearly verbatim regurgitation of the claim fails again for the same reason.  Plaintiff does not identify, by page or paragraph or section, what parts of the Employee Manual SDA breached.  Plaintiff further fails to identify how any such breach occurred – who caused the breach, when it occurred, or what "mandate" in the Employee Manual SDA violated.  SDA and this Court are left guessing and, at best, struggling to put together a puzzle with many missing pieces.  For those reasons, SDA respectfully requests that Plaintiff's Seventh Count be dismissed with prejudice.

### b. Eighth Count – Breach of the covenant of good faith and fair dealing against SDA

Plaintiff's Eighth Count must be dismissed because Plaintiff fails to properly plead that an alleged employment contract existed between Plaintiff and SDA.  It is well settled that, without a contract, no implied covenants exist.  Luongo v. Village Supermarket, Inc., 261 F. Supp.3d 520, 532 (D.N.J. 2017) (implied covenant of good faith and fair dealing claim based on employee manual dismissed because no contract existed); see also Michaels, 2014 WL 2805098 at *18 ("A party cannot breach an implied term of a contract if there was no contract in the first

place."); Pepe v. Rival Co., 85 F. Supp.2d 349, 390 (D.N.J. 1999), aff'd 254 F.3d 1078 (3d Cir. 2001) ("The doctrine of good faith and fair dealing cannot, however, create rights or obligations in the absence of a valid contract."). The Court dismissed without prejudice Plaintiff's original good faith and fair dealing claim because Plaintiff could not state a breach of contract claim. July 29, 2020, slip op. at 9-10. Defendant SDA now respectfully requests that the Court dismiss the claim with prejudice for the same reason.

Even if SDA's Employee Manual was a valid contract, Plaintiff does not adequately plead the claim for an implied covenant of good faith and fair dealing. Plaintiff alleges that SDA breached the covenant because it (i) knew that good cause to discharge Plaintiff did not exist, (ii) failed to inform Plaintiff of her statutory rights for leave, and (iii) neglected to make a bona fide attempt to accommodate Plaintiff's unnamed disabling condition(s). Second Amended Complaint at ¶ 70. Plaintiff fails to provide any basis for her allegation that SDA terminated her employment with knowledge that good cause did not exist for doing so. Plaintiff also does not identify what statutory rights she believes SDA was obligated to inform her of, and who and when she was to be notified. Finally, as discussed above, Plaintiff never alleges what her disabling condition(s) are or were, what accommodation she sought from SDA, and how SDA failed to provide any such requested accommodation. In short, Plaintiff has failed to state a claim for breach of the implied covenant of good faith and fair dealing, and the Court should dismiss the Eighth Count for multiple reasons.

**6.  Liability of Defendant Farrales**

Plaintiff's causes of action against Defendant Farrales are limited to the First through Fifth Counts, apparently on the theory of aiding and abetting liability under the NJLAD.[8]  Those claims are inadequately pled especially with respect to Defendant Farrales, and should be dismissed with prejudice at this time as to her.

Individuals can be held liable under the NJLAD if they "aid, abet, incite, compel, or coerce" acts that are otherwise forbidden under the NJLAD.  N.J.S.A. §10:5-12e.  To hold an individual liable under that provision of the NJLAD, "1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation."  Hurley v. Atlantic City Police Dept., 174 F.3d 95, 127 (3d Cir. 1999).  As for the "substantial assistance" prong of that analysis, a court must assess, among other things, "(1) the nature of the act encouraged, (2) the amount of assistance given by the supervisor, (3) whether the supervisor was present at the time of the asserted harassment, (4) the supervisor's relations to the others, and (5) the state of mind of the supervisor."  Tarr, 181 N.J. at 84 (citing Restatement (Second) of Torts, § 876(b) comment 4; Hurley, 174 F.3d at 127 n.27).

The deficiencies of the claims as to Defendant Farrales are several and obvious.  As an initial matter, if none of the First through Fifth Counts are adequately pled as to SDA, they cannot state claims against Defendant Farrales.  In addition, Plaintiff fails to describe what specific actions Defendant Farrales took that create liability for her.  Instead, Plaintiff repeatedly

---

[8] The ad damnum clause in Plaintiff's first Sixth Count mentions Defendant Farrales, but otherwise Defendant Farrales's name does not appear in the first Sixth Count.

alleges, without more, that Defendant Farrales provided "substantial assistance or encouragement" to the allegedly improper actions of SDA. Plaintiff's mere rote incantation of one part of the legal standard for attaching individual liability under the NJLAD is not sufficient pleading practice under the Federal Rules. Advanced Rehab., 498 Fed. Appx. at 176. Because Plaintiff's allegations are conclusory and vague, no facts are pled that allow one to assess whether a cause of action against Defendant Farrales actually exists. For example, the Second Amended Complaint does not shed light on the amount of assistance Defendant Farrales allegedly provided the purveyors of the allegedly improper actions; or whether Defendant Farrales supervised the alleged wrongdoers; or whether Defendant Farrales was present when the alleged wrongdoers committed their alleged wrongdoing. Because the Second Amended Complaint is so inadequate as to issues surrounding Defendant Farrales especially, the First through Fifth Counts should be dismissed as to her.

## CONCLUSION

For the foregoing reasons, Saint Dominic Academy and Guendolyn Farrales respectfully request that Plaintiff's Amended Complaint be dismissed, with prejudice.

/s James K. Webber
James K. Webber
WEBBER MCGILL LLC
760 Route 10, Suite 104
Whippany, NJ 07981
(973) 739-9559
jwebber@webbermcgill.com
*Attorneys for Defendants Saint Dominic
Academy and Guendolyn Farrales*

July 2, 2021