## EXECUTIVE STATEMENT & PROCEDURAL HISTORY

*Executive Statement.*

Defendant's Motion to Dismiss under Fed.R.Civ.P.12(b)(6) appears to completely miss the premise of a Motion to Dismiss.   Defendant is attempting to plow all the violations of law into the *ministerial exception* under *Our Lady of Guadalupe School v. Agnes Morrissey-Berru, 140 S.Ct. 2049, 207 L.Ed.870.*  However, the *ministerial exception* is "an affirmative defense to an otherwise cognizable claim, not a jurisdictional bar." Hosanna-Tabor, 565 U.S. at 709 n.4.

Defendant does not meet the standard for a partial Fed.R.Civ.P.12(b)(6) motion, instead attempting to encourage the court to adopt Defendant's statement of facts to dismiss pertinent portions of the Plaintiff's lawsuit.  Further, Defendants attached exhibits and certifications to their latest 12(b)(6) motion.   These should be ignored; [w]hen reviewing a Rule 12(b)(6) motion to dismiss, "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).*

Plaintiff's Amended Complaint (DE#21) was filed on May 28, 2021 (attached hereto as Ex. A), as permitted by Order (DE#20) attached hereto as Ex. B.

The amended complaint as alleged is Plaintiff Simon made non-ministerial complaints to her employer Saint Dominic Academy (hereinafter SDA); and Guendolyn Ferrales; due to such employment

related non-ministerial complaints and exercise of her rights, Plaintiff Simon Chairperson of the Religious Department and Campus Ministry was terminated on October 9, 2018. (DE#21, p.3).

*Procedural History*.

Plaintiff filed her original Complaint against Defendants on October 2019 in the Superior Court, State of New Jersey, Hudson Vicinage  (DE #1, Ex. A). Defendants' counsel filed a Notice of Removal under 28 U.S.C. §1441 Plaintiff's Complaint on December 11, 2019 (DE #1).  After refusing to consent to allow Plaintiff to amended her original complaint Defendants' counsel filed a 12 (b)(6) Motion for Dismissal (DE#3) which was considered by this court. A July 29, 2020 Order (DE#10) DENIED the motion to dismiss as to Plaintiff Simon's retaliation claim in Count Four against Saint Dominic Academy (SDA).  Said Order allowed Plaintiff to Amend her state complaint within U.S.D.C. N.J. within thirty (30) days (DE#10). After a second iteration of Defendants' 12(b)(6) motion, the Court allowed another Amended Complaint (DE#20) by Order, and Plaintiff Simon did so on May 28, 2021 (DE#21).  Defendants filed the subject Motion to Dismiss.

## STATEMENT OF FACTS

The AMENDED Complaint (Ex. A) read as true,  states in part,

For the sake of the Motion for Partial Dismissal under Fed.R.Civ.P.12(b) the allegations are to be construed as true and correct, *infra*.

October 9, 2018 termination Plaintiff was an employee of Defendant Saint Dominic Academy; Plaintiff Simon held the position of teacher; Plaintiff Simon was not a member of the clergy nor a minister; she did not perform ecclesiastical acts. Further, Plaintiff Simon never held herself out as a religious nor claimed any special tax allowances or incentives as she was not exempt as a minister. Plaintiff Simon taught; she was and is an educator.

9. At the time of her illegal and unlawful termination, Defendant Guendolyn Farrales was the Dean of the Defendant Saint Dominic Academy; she along with several other administrators, lacked the proper credentials to hold their positions either by credentialing mandates, Diocese requirements, or accreditation requirements. Defendant Farrales continues in that position.

10. Plaintiff Joan Simon was replaced in the classroom position by an individual, under the age of 30; upon information and belief age 23 at time of the termination, without a teaching certification, and without any experience. No disclosure was made to the Parents of the Students of this non-credentialed teacher entering the classroom.

11. Immediate prior to the termination, Plaintiff Simon's father-in-law had died the evening prior. Plaintiff Simon was terminated without due process which typically includes written advisement, discussion, perhaps a hearing, and demonstration of good cause. There is an

employee handbook that was not followed. The Defendants took no actions to detect violations of the policy or handbook of the Defendant Academy had been effectuated by other similar situated employees of the Defendant Academy. The pretext for termination allegedly dated back to September 10, 2018. Termination was made the day Plaintiff Simon returned from sick leave after she had been involved in a motor vehicle accident.

12. Plaintiff Simon is an experienced professional with over four decades of being an educator, specifically in teaching theology, and overseeing the Religion Department and Campus Ministry for Defendant Saint Dominic. Plaintiff Simon has a Masters in Theology and a Masters in Educational Administration along with a New Jersey Principal's license. Plaintiff Simon was replaced by a person with an English Degree, on the promise of employment in 2019-2020.

13. Plaintiff Simon had frequently made violations of the law and violations of educational process known to the Defendant Academy's Administration. Those violations included, but not limited to, as permitted by Sarah Degnan and refused by Sister Marylou Bauman, as permitted by Sarah Degnan:

☐ Defendant Saint Dominic Academy failed to conduct monthly fire drills;

☐ Defendant Saint Dominic Academy failed and refused to include "Lock Down Procedures" for the student body;

☐ Students' medical records are not kept up-to-date;

☐ Students were left unattended throughout the school day and after school;

☐ Students are left after school, as Administrators leave the grounds when the students complete their academic schedule. Sports meetings are held after school without coaches being there; Students go to Lincoln Park without supervision;

☐ Drug use in the building has been observed; the Administration was advised. When Plaintiff Simon divulged this information to Sister Marylou Bauman, the latter stated, "there were not any drugs used and to mind your own business." Plaintiff Simon observed students coming to school high on coke and marijuana.

☐ Sister Marylou Bauman refused to take action on Bullying Complaints. Sister refused to address the student responsible for bullying, while the victim stayed out of school for an extended period of time;

☐ Sister Marylou Bauman went on the PA System and described the female students as "whores" for wearing their uniforms too short, as a neighbor complained to the school. The upset students were greeting each other the next day, "Hi, Whore!" To demonstrate the farcical nature of their acts, the Administration called an Assembly the next day and told the students, "Sister never said that."

☐ Sister Marylou Bauman demeaned the President of the Student Council by making her get on her hands and knees to clean up spilled coffee. The Student's Parents were furious and when complaining to the Head of School, they were told to "take it further if they wish, " as nothing was done to Sr. Bauman.

☐ The Defendant Administration lacks credentials for their positions coupled with the Defendants failure to adhere to their own policies, demonstrates the unconstitutional acts of discrimination and retaliation carried out by the Defendants:

-Head of School Sarah Degnan has an Administration Degree but no Principal's License;

-Not one Administrator has their credentials for the State of New Jersey;

-Academic Dean, Individual Defendant Guendolyn Ferrales, has a Bachelor's Degree from the Philippines. She does not have the Master's Degree that is required on her position;

-Sr. Marylou Bauman does not have a Master in Administration, only in Guidance and English;

- Director of Admissions has a Bachelor's Degree in Early Childhood;

☐ Defendant Saint Dominic Administration does not observe Confidentiality and Privacy Act rights as they have discussed termination of Plaintiff Simon, Lori Palmeri, Jim German, and Chris Kempt publicly and openly;

☐ Sr. Marylou Bauman maintains her own finance account, in which money raised by the Students was improperly taken by Sr. Bauman for uses other than intended. Plaintiff Simon brought this to the attention of Head of School. Sr. Bauman refused to deliver funds to the Finance Department.

☐ Head of School Sarah Degnan has taken her minor daughter on class trips, including overnights, for which the minor daughter is taking a seat of student that was not permitted to go/attend;

☐ Most faculty members are not Certified in their subject area. This is not disclosed to Parents who remit tuition for subject matter experts;

☐ Defendant Saint Dominic Academy refuses to comply with the 180 days of school requirement of the State of New Jersey.

14. Likewise, during her tenure as a department chairperson Plaintiff Simon made the aforementioned incidents known to the Defendant SDA and the Individual Defendant Farrales, as well as other administrators of SDA.

15. On October 9, 2018, Defendant Saint Dominic Academy unlawfully and illegally terminated Plaintiff Simon's employment at the direction of Defendant Sarah Degnan, Head of School with Guendolyn Farrales, and Sharon Buge (Administrators in attendance), Defendant Saint Dominic Academy, with the assistance and conspiring by Sr. Marylou Bauman. Plaintiff Simon was replaced in the classroom by an individual without a teaching certification, younger in age (23), and unqualified to teach the classes and instruction previously assigned to Plaintiff Simon. This tangible employment action had nothing to do with Plaintiff Simon's performance.

16. Defendant SDA and individual defendants must adhere to complying with neutral civil laws of general applicability; they have failed to do so. The defendants receive and benefit from no immunity of such laws broken in this lawsuit. Nothing Plaintiff Simon did burdened any religious practice of SDA. Plaintiff Simon is a member of protected classes: age, disability, and protected activity of FMLA, and NJFLA. Defendants' asserted reasons for termination in firing Plaintiff Simon were pretextual. The termination was not based on performance issues. Individual Defendants never investigated nor questioned any other employees if they violated the employee handbook or SDA policies.

Plaintiff has "allege[d] sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." Connelly v. Lane Const. Corp., 809 F.3d 780, 789 (3d Cir. 2016).

# **LEGAL ARGUMENT**

## **POINT I**
## **MOTION TO DISMISS STANDARD**

In considering a Partial Motion to Dismiss under *Fed. R. Civ. P. 12(b)(6)*, the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Phillips, 515 F.3d at 231* (*quoting Pinker v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002)*).  According to the Supreme Court in *Twombly*, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his[/her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *550 U.S. at 555* (internal citations omitted). The Third Circuit summarized the Twombly pleading standard as follows: "'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element." *Phillips, 515 F.3d at 234 (quoting Twombly, 550 U.S. at 556)*.  Plaintiff has met that standard.

In *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009),  the Third Circuit directed district courts to conduct a two-part analysis. First, the court must separate the factual elements from the legal conclusions. Id. The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Id. at 210-11. Second, the court must determine if "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. at 211 (quoting Iqbal, 566 U.S. at 679). "In other words, a

complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." Id. (citing Phillips, 515 F.3d at 234-35.)

The purpose of a Fed. R. Civ. P. 12(b)(6) motion is to test the legal sufficiency of a complaint. In deciding a motion to dismiss for failure to state a claim, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from them after construing them in the light most favorable to the non-movant.

Fed. R. Civ. P. 8(a)(2) provides that a complaint must include only a short and plain statement of the claim showing that the pleader is entitled to relief. Such a statement must simply give the defendant fair notice of what the Plaintiff's claim is and the grounds upon which it rests. This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.

Not only are the pleadings sufficiently *detailed* to state a claim, but, if proven, they establish that Plaintiff was required to endure an environment that "objectively" was *severely* and *pervasively* hostile. First, looking at the totality of the circumstances rather than to individual events in isolation, *see Harris*, 510 U.S. at 23; *Cruz*, 202 F.3d at 570,

The Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest" the required element. This "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough facts to raise a reasonable expectation <u>that discovery will reveal evidence of</u>" the necessary element.  See *Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).*

Not only are the pleadings sufficiently *detailed* to state a claim, but, if proven, they establish that Defendants  breached federal and state laws through its actions.  Plaintiff has surely surpassed the pleading standard.

***Outside Documents Cannot Be Considered****.*

Defendants' Partial Motion to Dismiss appears to reflect mention of documents all of which cannot be considered in this motion.  None of these documents have been provided to the Plaintiff.   In evaluating a plaintiff's claims on a motion to dismiss, generally "a court looks only to the facts alleged in the complaint and its attachments without reference to other parts of the record." *Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).* The general rule is that a court must accept as true the facts pled in a complaint in ruling on a motion to dismiss.  Robb v. City of Phila., 733 F.2d 286, 290 (3d Cir. 1984).  A document must be "integral to or explicitly relied upon in the complaint" to be subject to consideration at the motion to dismiss stage *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997) (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996).*

None of the documents mentioned in the Defendant's brief meet these stringent requirements, nor can it circumvent the requirement.


## POINT II

### DEFENDANTS' TOTAL RELIANCE ON OUR LADY OF GUADALUPE IS MISPLACED. A DEFENSE TO NJLAD, CONTRACT BREACH, FMLA CITING FIRST AMENDMENT IS NON-JURISDICTIONAL

As aforementioned, under *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171, 195 n.4 (2012) conflicts have arisen whether the *ministerial exception*, a First Amendment Liberty defense "is a jurisdictional bar or a defense on the merits."  The court held the latter was true holding that the exception operates on the merits as an affirmative

defense to an otherwise cognizable claim, not as jurisdictional bar, because "the issue presented by the exception is whether the allegations the Plaintiff makes entitle her to relief, not whether the court has power to hear the case." Id.   Therefore, the 12(b)(6) motion must be denied and a Rule 16 Conference held to set forth a discovery period with which to conduct discovery.

*Hosanna-Tabor* stands for the proposition that in employment discrimination cases the First Amendment does not act as a substantive restraint on jurisdiction. Id.   Plaintiff Simon was not a "minister," and therefore the New Jersey Law Against Discrimination, Family Leave Act, and Family Medical Leave Act may be constitutionally enforced against Saint Dominic's Academy.[1]

None of the allegations set forth in the recent Amended Complaint against SDA is unconstitutionally encroaching on SDA's management of its own internal "ministerial" affairs. The critical difference is that New Jersey Law Against Discrimination, NJSA 10:5-1, et seq. does not impose liability on acts of charity or religion, it prohibits New Jersey employers from engaging in acts of discrimination against employees based on their membership in a protected class.   The New Jersey Legislature imposed a neutral civil law of general applicability to combat a democratically-recognized societal ill.  A Catholic School is generally not above complying with neutral civil laws of general applicability; see payment of payroll taxes, Middle States Accreditation, health insurance requirements.    The Courts have recognized laws of general applicability, as here, could apply to religious entities. *See Employment Division Dep't of Human Resources of Oregon v. Smith, 494 U.S. 872, 873*.

Seemingly lost within the Defendants' current motion to dismiss was the determination by the court that Count IV, Retaliation was that Plaintiff Simon did indeed state a retaliation claim. *See Boles v. Wal-Mart Stores, Inc. No. 12-1762, 2014 WL 1266216, at *8 (D.N.J. Mar. 26,2014), and Nusbaum v. CB Richard Ellis, Inc., 171 F.Supp. 2d, 377, 388 (D.N.J. 2001)* (concluding that the plaintiff who was terminated while on leave of absence for medical reasons pled a prima facie retaliation claim under the LAD).

---

[1] It should be noted Sarah Degnan, unaccredited Principal, who played a major role in Plaintiff Simon's allegations was terminated from employment with SDA.

Likewise, we note IAW Appendix R, Local Rules ¶27: "We will base our discovery objections on a good faith belief in their merit and will not object solely for the purpose of withholding or delaying the disclosure of relevant information, or for any other improper purpose." Defendants' counsel appears to be withholding, or delaying disclosure of information, i.e. age of replacement teacher, stipulating that Plaintiff Simon was out of medical leave, and requested accommodations, i.e. sick/convalescent leave, being made.

## POINT III

### ECCLESIASTICAL ABSTENTION IS A MATTER FOR DISCOVERY. PLAINTIFF WAS NOT TERMINATED FOR ACTS INVOLVING MINISTRY

The question is whether Plaintiff Joan Simon, the terminated employee, was actually serving in a ministerial role. See 140 S.Ct. 2049, 2064-2065 (2020); she was not. Notably, the Hosanna-Tabor court did not say religious entities are insulated from any and all discrimination suits. Further, the Defendants' total reliance on *Our Lady of Guadalupe* is misplaced. The Supreme Court again did not state that religious entities are exempt from employment discrimination suits *en toto*; instead the question was whether the employee-a teacher- was actually serving a ministerial role. Id.

Further, if Defendant SDA takes the position that Plaintiff Joan Simon performed ministerial functions for SDA, then they better possess IRS Form 4361 which depicts exemptions from employment taxes, set forth in IRS Publications 517 set forth in IRS Topic 417. The church is not required to withhold income taxes from the compensation of a "minister." This point demonstrates two issues: 1). Plaintiff Joan Simon is not a minister and was not treated as such; 2). SDA is subject to general laws of applicability like all others employers- and they have not challenged that applicability to their organization.

The First Amendment does not prevent courts from adjudicating whether SDA stated reasons for an adverse employment action, i.e. Joan Simon's termination on October 8, 2018, against a non-ministerial employee is in fact pretext for illegal discrimination. See e.g. Garrick v. Moody Bible Institute, 494 SF.Supp.3d 570, 577 (N.D. Ill. 2020), holding that the First

Amendment permits a court to determine whether a religious organization employer actually terminated an employee on the basis of the organization's religious beliefs or, as here, invoked its religious beliefs after they were sued as a "cover to discriminate" against Plaintiff Joan Simon on a protected basis under anti-discrimination laws.

Federal courts across the Circuits have long recognized that there is nothing inherently ecclesiastical about a religious organization's employment decisions dealing with non-ministerial employees, *See Garrick, 494 F.Supp.3d at 577-78*. Courts cannot abstain from resolving civil cases involving religious entity litigants unless theological controversy, church controversy, ecclesiastical government, conformity of members of the church to the standards and morals required of them. Secondly, it would have to be forcing an unwanted minister on an organization, *See Hosanna-Tabor, 565 U.S. at 188*.

We cannot continue down the Defendant SDA's path of stretching the ecclesiastical abstention doctrine beyond its limit by eliminating the requirement that a dispute actually is ecclesiastical in nature for abstention to apply. This is a matter for Discovery.

# POINT IV

## PLAINTIFF ALLEGES LEGALLY SUFFICIENT FACTS IN SUPPORT OF CLAIMS UNDER N.J.S.A. 10:5-1, et seq., AGE DISCRIMINATION DEFENDANT SDA (COUNT I)

Once again Defendants' counsel appears to be mis-utilizing a 12(b)(6) motion for a peremptory summary judgment motion. Plaintiff Joan Simon, a sexagenarian (in her 60s), was replaced by a younger employee, who lacked credentials to even teach religion (¶15; ¶20, Amended Complaint), and "Plaintiff Joan Simon was replaced in the classroom position by an individual, under the age of 30, without a teaching certification, without a Theology Degree, and without any experience." (See DE#21, ¶10).   Plaintiff Simon makes it clear "with her over four

decades of being an educator, specifically in teaching Theology and overseeing the Religion

Department and Campus Ministry for Defendant Saint Dominic (Id. ¶12). Plaintiff Simon has not

only alleged her age but that of her replacement. The LAD does not specify a quantifying age to

assert an age discrimination claim; however, Plaintiff Simon, a sexagenarian, was unlawfully

replaced by someone of substantially lower age (in her twenties).  In this age discrimination

claim under NJLAD, Plaintiff Simon has demonstrated that "(1) Plaintiff belonged to a protected

class; (2) she was qualified for the position (a position for which she worked for many years); (3)

she was subject to an adverse employment action despite being qualified . . .terminated in

October 9, 2018; (4) under circumstances that raise an inference of discriminatory action . . ."

*Sarullo v. United States Postal Service, 352 F.3d 789, 797 (3d Cir.2003)*.  Moreover, discovery

is the tool for which the hiring of Plaintiff Simon's twenty-something replacement would be

verified.  Defendants' counsel is aware and has knowledge of the replacement and her age.


## POINT V


### PLAINTIFF ALLEGED SUFFICIENT FACTS TO SUSTAIN A
### CAUSE OF ACTION UNDER DISABILITY DISCRIMINATION
### UNDER N.J.S.A. 10:5-1, ET SEQ. IN COUNT II.


The Defendants' partial motion to dismiss appears to suggest that Plaintiff Simon did not

suffer from a disabling condition.  It was clearly alleged in the Amended Complaint that

Plaintiff had been subject to a motor vehicle accident, and was out on approved sick leave

(¶11, DE#11).  Further, Plaintiff Simon alleged, "Plaintiff Simon suffered from disabling

conditions that with an accommodation could, and did, perform the functions of her position

and profession." Id. ¶25.   If the court and Defendants' partial motion to dismiss is requiring

a public disclosure in violation of HIPAA, their partial motion to dismiss should state that request and the authority of having to disclose the "disabling condition" on the public record. Once again, it appears the Defendants have ignored facts and disclosures at their disposal, and instead placed their litigation position before the facts.

Further, case law is clear that employers who fail to provide reasonable accommodation (as set forth in ¶¶25-29) to people with disabilities may be found liable for discrimination, *See Colwell v. Rite Aid Corp., 602 F.3d 495, 504-05 (3d Cir. 2010).* Likewise, it is noted that courts generally construe the New Jersey Law Against Discrimination (LAD) more liberally than the ADA. *See Failla v. City of Passaic, 146 F.149, 154 (3d Cir.1988)*, noting that LAD provides a lower standard than ADA because the LAD definition of 'handicapped' does not incorporate the requirement that the condition result in a substantial limitation on a major life activity.

It was Individual Defendant Farrales who was responsible for the adverse personnel actions in which she ordered the termination as set forth in the Amended Complaint. *See Rode v. Dellaciprete, 845 F.2d 1195, 1207 (3d Cir.1988).* Defendant's counsel obviously has either not interviewed Defendant Farrales, Dean, nor has she reviewed the responses from the New Jersey Office of Civil Rights.

The Plaintiff's Amended Complaint makes it clear that Defendant SDA, as employer, failed in its obligation to engage in a good faith interactive process with them to identify a reasonable accommodation; this was not done (DE#11;¶25-29). Defendants cannot arrive at an accommodation for Plaintiff Simon's disability without first seeking and considering in

good faith the employee Simon's input; *See Lewis v. Univ. of Pa., 2019 U.S.App. LEXIS 23818 (3d Cir. 2019).*

If the court requires that Plaintiff Simon publicly disclose her physical infirmities on the public record, despite the Defendants having full knowledge of the disabling conditions, perhaps a more definite statement *IAW Fed.R.Civ.P. 12(e)* may be considered.  Otherwise, the U.S.D.C. is requiring Plaintiff Simon to give up her HIPAA and Privacy Act rights under 5 USC §552a(b).

## POINT VI

### PLAINTIFF SIMON'S AMENDED COMPLAINT, COUNT III SUFFICIENTLY PLEADS HOSTILE WORK ENVIRONMENT UDNER NJSA 10:5-1 TO -42

While it is clear "the LAD is not intended to be a general civility code for conduct in the workplace . . ." Mandel v. USB/Paine Webber, Inc., 373 N.J. Super.55, 73 (App.Div. 2004), Plaintiff Simon describes severe and pervasive harassment due to Plaintiff Simon's age and making protected communications.  Plaintiff Simon was mocked and harassed, as set forth in ¶¶13-15, which resulted in the termination of Plaintiff Simon, to wit:

13.    Plaintiff Simon had frequently made violations of the law and violations of educational process known to the Defendant Academy's Administration.   Those violations included, but not limited to, as permitted by Sarah Degnan and refused by  Sister Marylou Bauman, as permitted by Sarah Degnan:

•       Defendant Saint Dominic Academy failed to conduct monthly fire drills;

•       Defendant Saint Dominic Academy failed and refused to include "Lock Down Procedures" for the student body;

•       Students' medical records are not kept up-to-date;

•       Students were left unattended throughout the school day and after school;

•      Students are left after school, as Administrators leave the grounds when the students complete their academic schedule. Sports meetings are held after school without coaches being there; Students go to Lincoln Park without supervision;

•      Drug use in the building has been observed; the Administration was advised.  When Plaintiff Simon divulged this information to Sister Marylou Bauman, the latter stated, "there were not any drugs used and to mind your own business."  Plaintiff Simon observed students coming to school high on coke and marijuana.

•      Sister Marylou Bauman refused to take action on Bullying Complaints.  Sister refused to address the student responsible for bullying, while the victim stayed out of school for an extended period of time;

•      Sister Marylou Bauman went on the PA System and described the female students as "whores" for wearing their uniforms too short, as a neighbor complained to the school.  The upset students were greeting each other the next day, "Hi, Whore!"   To demonstrate the farcical nature of their acts, the Administration called an Assembly the next day and told the students, "Sister never said that."

•      Sister Marylou Bauman demeaned the President of the Student Council by making her get on her hands and knees to clean up spilled coffee.  The Student's Parents were furious and when complaining to the Head of School, they were told to "take it further if they wish, " as nothing was done to Sr. Bauman.

•      The Defendant Administration lacks credentials for their positions:

          -Head of School Sarah Degnan has an Administration Degree but no Principal's License;
          -Not one Administrator has their credentials for the State of New Jersey;
          -Academic Dean, Individual Defendant Guendolyn Ferrales, has a  Bachelor's Degree from the Philippines.  She does not have the Master's          Degree that is required on her position;

          -Sr. Marylou Bauman does not have a Master in Administration, only in Guidance and English;
          - Director of Admissions has a Bachelor's Degree in Early Childhood;

• Defendant Saint Dominic Administration does not observe Confidentiality and Privacy Act rights as they have discussed termination of Plaintiff Simon, Lori Palmeri, Jim German, and Chris Kempt publicly and openly;

• Sr. Marylou Bauman maintains her own finance account, in which money raised by the Students was improperly taken by Sr. Bauman for uses other than intended.  Plaintiff Simon brought this to the attention of Head of School.  Sr. Bauman refused to deliver funds to the Finance Department.

• Head of School Sarah Degnan has taken her minor daughter on class trips, including overnights, for which the minor daughter is taking a seat of  student that was not permitted to go/attend; (Id. ¶13).

Each of those instances was frequent, sever, and threatening and humiliating.  The actions of Sister Bauman and those within the Defendant SDA employ was so threatening it ultimately ended in the termination of her long term employment (See Id. ¶15).

Again, this is not a summary judgment motion, but a pleading facts of the complaints made and the demeaning, "there were not any drugs used, and mind your own business." ¶13 And describing females as "whores" publicly does indeed rise to the level of severe and pervasive, especially in light of a Catholic Theology Teacher (Plaintiff Simon) being subjected to such statements.  Nowhere would this considered acceptable.  The pleading requirement is met that created a hostile, intimidating, and offensive working environment, *Sciavo v. Marina Dist.Dev.Co., LLC 442 N.J. Super. 346,368 (App. Div. 2015)*

Similarly, as recently held in *Crisitello v. St. Theresa School, 465 N.J.Super.223, 242 A.3d 292 (N.J. Super. App. Div. November 19,  2020)*, *Crisitello* court found that after discovery Plaintiff developed established that Crisitello satisfied her burden of proof.  Likewise, with discovery Plaintiff Simon will be able to establish her prima facie cases, and ultimate burden.

## POINT VII

**PLAINTIFF SIMON'S AMENDED COMPLAINT COUNT V SUFFICIENTLY PLEADS
RELIGIOUS DISCRIMINATION UNDER NJSA 10:5-1 TO -42**

Plaintiff Simon (a devout Roman Catholic) was Chairperson of Religion Department
(¶14) and Campus Ministry and was terminated on October 9, 2018 (¶8).  Plaintiff Simon was
replaced by a non-religious teacher.  Plaintiff Simon has a Masters in Theology and a Masters in
Educational Administration along with a State of New Jersey Principal's license (¶12).  Plaintiff
Simon was unlawfully and illegally terminated at the direction of Sarah Degnan, Guendolyn
Farrales and Sharon Buge (¶15).  No other faculty member were terminated on October 9, 2018
(id.)

The Law Against Discrimination (LAD) has two specific subsections, N.J.S.A. §10:5-12(d)1 and
-12(r)2, addressing employer retaliation against employees for engaging in "protected" activity.
Subpart (d) identifies two categories of employee activity that are "protected" under the Law: (1)
opposing practices or acts that are unlawful under the LAD, i.e., complaining about, or protesting
against, discrimination in the workplace.

Plaintiff Simon's pleading requirements under Victor, 203 N.J. at 408 have been met:
Roman Catholic, a faculty member; was qualified and was performing the essential functions of
the job- as she had for 11 years; suffered terminated on October 9, 2018; and others not in the
protected class did not suffer similar adverse employment decisions.  One must only perform a
cursory review of the Amended Complaint to concur that Plaintiff Simon's religious beliefs
prohibited referring to young students as "whores;" and that Sr. Bauman stealing from mission
fundraisers was violative of "thou shall not steal" prohibition in civil law as well as the Catholic
Church (see violations list at ¶13).  Plaintiff Simon was consistent with church teaching.

Does Defendants' counsel argue that Plaintiff Simon's consistent teaching of church
doctrine is now "flexible" and may be inconsistent with the Roman Catholic Church?

## POINT VIII

## PLAINTIFF SIMON'S AMENDED COMPLAINT ASSERTS
## VIOLATIONS OF N.J.S.A. §34:15-39.1

Plaintiff's cause of action for wrongful discharge was based upon a section of the Workers' Compensation Law, N.J.S.A. 34:15-1 to -128, prohibiting discharge or discrimination against an employee in retaliation for filing workers' compensation claims or related conduct:

"It shall be unlawful for any employer or his duly authorized agent to discharge or in any other manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workmen's compensation benefits from such employer, or because he has testified, or is about to testify, in any proceeding under the chapter to which this act is a supplement. For any violation of this act, the employer or agent shall be punished by a fine of not less than $100.00 nor more than $1,000.00 or imprisonment for not more than 60 days or both. Any employee so discriminated against shall be restored to his employment and shall be compensated by his employer for any loss of wages arising out of such discrimination; provided, if such employee shall cease to be qualified to perform the duties of his employment he shall not be entitled to such restoration and compensation."
[N.J.S.A. 34:15-39.1.]

Plaintiff's cause of action for retaliatory discharge is enforced by this civil action, See Brook v. April, 294 N.J.Super. 90, 100; 682 A.2d 744 (App.Div.1996).

Plaintiff's cause of action for the October 9, 2018 wrongful discharge based on unlawful retaliatory conduct depends upon proof of motive or intent, much as does the plaintiff's claims for unlawful discrimination in *Fuchilla. Fuchilla v. Layman, 210 N.J. Super. 574, 578-80 (App. Div. 1986), aff'd 109 N.J. 319, at 335 cert. denied, 488 U.S. 826, 109 S. Ct. 75, 102 L. Ed.2d 51 (1988)*

## POINT IX

### PLAINTIFF SIMON'S AMENDED COMPLAINT ASSERTS VIOLATIONS OF FMLA, 29 U.S.C. 2601, ET SEQ. (COUNT VI AND COUNT IX)

Under the FMLA, 29 U.S.C. §2601, et seq. Defendant SDA was required to restore Plaintiff "to the position of employment held" when she left for leave, or to "an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment."  (Ex. 1; ¶59).

Defendant SDA violated FMLA when it terminated Plaintiff [Simon] upon her return to work following leave. The U.S. Department of Labor's Wage and Hour Division (WHD) has promulgated additional rules and procedures for determining who is entitled to leave. See 29 U.S.C. § 2611 et seq., 29 C.F.R. Part 825. Employers cannot interfere with the rights guaranteed by the FMLA, and they may be liable to aggrieved employees for damages if they do. 29 U.S.C. §§ 2615, 2617. (Ex.1; ¶60).

It is clear that Plaintiff Simon accessed her FMLA, invoked her rights; suffered an adverse act (Terminated October 9, 2018); the adverse act occurred within days of taking the FMLA and casually related to such FMLA leave. *Ross v. Gilhuly, 755 F.3d 185, 191-93 (3d Cir. 2014) quoting Lichenstein v. Univ. of Pittsburgh Med.Ctr., 691 F.3d 294, 302 (3d Cir. 2012).*

Likewise, retaliation for intermittent FMLA use set forth under COUNT IX is likewise correctly pled for SDA's violation of Plaintiff Simon's rights.

## POINT X

### PLAINTIFF'S COMMON LAW CLAIMS OF BREACH OF CONTRACT (COUNT VII) AND IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (COUNT VIII) ARE SUSTAINABLE.

Plaintiff Simon a resident of the State of New Jersey, was an employee of the Saint Dominic Academy.   Defendant SDA is a employer serving educational needs, operating within

the State of New Jersey.   It is clear as an employee that Plaintiff Simon was "at-will" satisfying

the   requirement of a contract, either express or implied.  *Woolley v. Hoffman La Roche, 99 N.J.*

*284, 297-98, modified o.b. 101 N.J. 10 (1995).*  Plaintiff Simon further sets out the contract at

p.14, para 2 of the Complaint:

 "2. The requirements of <u>collective bargaining</u>, <u>civil service employment</u>, <u>employee</u>

<u>handbook</u>, and the actual documents <u>created a contract between Plaintiff and Defendant Bayonne</u>

<u>Board of Education</u> because the documents' plain language led her to reasonably believe that the

BBOE policies regarding, inter alia, job ability and security would be honored."  Id.


This not only demonstrates what makes up the contract, but that the Breach of Contract is

alleged against Defendant BBOE (not Individual Defendant McGeehan).  Defendants' counsel

obfuscation deserves no recognition.


Plaintiff sets forth clearly the Common Law Claims of Breach of Contract, as well as the

Implied Covenant of Good Faith and Fair Dealing (See pp.14-16, Complaint).  Plaintiff sets forth

the contract and the requirements thereto under *N.J.A.C. 6A:23-4.4.*  The allegations are clear

that Defendant SDA's actions caused a breach of the contract.  Further, the Defendants' actions

thwarted the Plaintiff Simon's expectation and/or purpose under the contract. (See p. 14,

Amended Complaint).


Plaintiff Simon has pled sufficient facts to survive a motion to dismiss.  Defendants'

motion to partially dismiss Plaintiff's breach of contract claim should be denied.

Alternatively, if the Court feels more specific facts are required, Plaintiff requests leave to file a more definite statement in accordance with Fed.R.Civ.P. 12(e), or a curative amendment under Fed.R.Civ.P. 15.

The implied covenant of good faith and fair dealing generally arises in three contexts. The covenant applies where terms and conditions not expressly included in the contract are included because the parties must have intended these terms as necessary to give business efficacy to the contract. *N.J. Bank v. Pallidino, 77 N.J. 33, 46 (1978).* The covenant is also a form of redress of bad faith performance of an agreement although the defendant has not breached the express terms of any agreement. *Sons of Thunder, Inc. v. Borden, Inc., 148 N.J. at 396 (1997).*

The covenant permits inquiry into a party's exercise of discretion expressly granted by a contract's terms. *Wilson v. Amerada Hess Corp., supra, at 270; see also Seidenberg v. Summit Bank, 348 N.J. Super. 243 (App. Div. 2002).* At-will employee may have a viable breach of implied covenant claim if he or she can prove the existence of some form of contract with the employer. Examples include a commission agreement or a contract arising out of an employee handbook. See, e.g., Wade v. Kessler Institute, 172 N.J. 327, 345 (2002). To act in good faith and deal fairly, a party must act in a way that is honest and faithful to the agreed purposes of the contract and consistent with the reasonable expectations of the parties. Defendant Farrales acted in bad faith, created a fiction to punish and terminate Plaintiff, rather than address the illegal drug use, stealing mission funds, and violations of state educational laws.

As here, a party must not act in bad faith, dishonestly, or with improper motive to destroy or injure the right of the other party to receive the benefits of the contract. *See Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Assoc., supra, at 230-231; Wilson v. Amerada Hess Corp., supra, at 251 (citations omitted); Sons of Thunder, Inc. v. Borden, Inc., supra, at 420. See also Wade v. Kessler Institute, supra, at 327; Palisades Properties, Inc. v. Brunetti, supra*. Defendant Farrales is liable for her actions.


## POINT XI

**VIOLATIONS OF NEW JERSEY FLA, N.J.S.A. 4A:6-1, ET SEQ. ARE SET FORTH IN COUNT X OF PLAINTIFF SIMON'S AMENDED COMPLAINT**

Plaintiff Simon's circumstances warranted leave as there were serious health conditions of a parent. (¶80).   Upon return from family leave the employer failed to reinstate Plaintiff Simon to her position or a position that was comparable in terms of pay, seniority, benefits, and other terms and conditions of employment. (¶81).

Under the statutory violations of the FLA, equitable remedies and compensatory damages are available, as well as punitive damages up to $10,000.00. (¶82).  Plaintiff Simon was taking leave to tend to her ailing father.


## <u>CONCLUSION</u>

WHEREFORE based on the foregoing, the Plaintiff requests the Court to deny the Defendant's 12 (b)(6) Motion to Dismiss *en toto* brought by Defendant.  The Plaintiff's factual allegations support cognizable claims upon which relief may be granted.  The court should deny defendant's motion and retain the case on the court's docket; issue a discovery order.

Respectfully submitted,


**LAW OFFICES OF GENESIS A. PEDUTO**
8512 Kennedy Blvd
North Bergen, New Jersey 07047
Telephone:     (201) 868-2240
suzyroseesq@aol.com

Dated: August 2, 2021


By:_____*Suzy R. Yengo, Esq.  /s/*_____
        **SUZY R. YENGO, ESQ.**
        **For the Plaintiff**

25